IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY McCLEESTER :
     Plaintiff :
  :
  v. : 3:CV-08-0010
  : (JUDGE VANASKIE)
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE, CO. :
     Defendant :

## MEMORANDUM

This declaratory judgment action seeks a determination of Plaintiff's entitlement to first party wage loss benefits under a policy issued by Defendant, State Farm Mutual Automobile Insurance Co. ("State Farm"). While proceeding on an interstate highway, on February 20, 2005, Plaintiff's vehicle was hit by a rock thrown by an adolescent. The rock broke through Plaintiff's windshield, and hit his right arm, resulting in serious and permanent injury. At the time of the incident State Farm had issued to Plaintiff an automobile insurance policy which provided first party wage loss benefits in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701 et seq. Plaintiff made a claim for wage loss benefits, which State Farm denied because Plaintiff's "injury did not arise out of the

maintenance or use of a motor vehicle." (July 22, 2006 Letter, Dkt. 32, at 132.)[1] Because Plaintiff's injury did not arise out of the maintenance or use of a motor vehicle, but instead, was caused by an intervening act committed by a third-party, State Farm's Motion for Summary Judgment will be granted, and Plaintiff's cross-motion will be denied.

I.    Background

On February 20, 2005, Plaintiff, Terry McCleester, was driving a Peterbilt truck with a flatbed trailer on Interstate 81 North near Scranton, Pennsylvania when a rock, approximately the size of a brick, was thrown from an overpass by an adolescent boy. (Defendant's Statement of Undisputed Material Fact ("DSUMF"), Dkt. 19, at ¶¶ 1-2.)[2] The rock broke through the windshield of the truck and struck Plaintiff's arm, breaking it. (Id. at ¶ 3.) At the time of the incident, Plaintiff was working in the scope of his duty as a truck driver. (Id. at ¶ 4.) Consequently, workers' compensation benefits were applicable, paid, and continue to be paid. (Id. at ¶ 5.)

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

[2] Plaintiff has admitted the first 29 of State Farm's 30-paragraph Statement of Undisputed Material Facts. (Dkt. 29.) Accordingly, State Farm's Local Rule 56.1 Statement will be relied upon for the background facts of this case.

2

At the time of his injury, Plaintiff had a personal automobile policy issued by State Farm. (Id. at ¶ 6.) The income loss benefit provision of the policy "was provided in accordance with and subject to the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 1701, et seq." (Id. at ¶ 7.) Plaintiff's policy also included an income loss benefit clause which provides reimbursement of eighty percent (80%) of income, after a five-day waiting period, up to $1,000 per month for a maximum total of $15,000. (Id. at ¶ 8.) The income loss benefit is in excess of workers compensation benefits and provides: "These coverages are excess over, but shall not duplicate, any amount paid or payable to or for the insured under any workers' compensation law." (Id. at ¶ 9.) Based upon Plaintiff's "pre-accident income, the terms of his policy, and the length of his disability, defendant concedes that the amount of income loss benefits at issue in this case is the full policy limit of $15,000." (Id. at ¶ 10.) The terms of Plaintiff's policy provide that income loss benefits will be paid "with respect to bodily injury to an insured arising out of the maintenance or use of a motor vehicle." (Id. at ¶ 11.) The policy, however, does not define "maintenance" or "use." (Id.)

Plaintiff's "claim for excess loss of income benefits was first asserted to State Farm by means of a letter dated March 9, 2006, some 12 months after the date of loss, from Ms. Janie Lamberton, paralegal for Mr. McCleester's attorney, to Mr. Dennis Guld of State Farm." (Id. at ¶ 12.) The letter stated: "'As per our recent telephone conversation, you indicated that Mr. McCleester may be eligible for wrap around wage loss. Please forward the necessary

paperwork to my attention if there is coverage for Mr. McCleester." (Id.) On March 21, 2006, the description of the incident given to State Farm was that Plaintiff had been struck by a rock thrown by kids from an overpass and that Plaintiff had been operating a work truck and was "on the job" when he was injured. (Id. at ¶ 13.)

"On March 24, 2006, Ms. Kate Mullen of State Farm issued to James Munley, Esquire, Mr. McCleester's attorney, a reservation of rights letter based upon a question of whether Terry McCleester's injuries arose out of the maintenance and use of a motor vehicle." (Id. at ¶ 24.) Two months later, on May 30, 2006, Mr. Charles Graham of State Farm wrote a letter to Mr. Munley asking for Mr. McCleester's statement in order to resolve the coverage issue. (Id. at ¶ 25.) Plaintiff's counsel did not respond to either letter, resulting in State Farm issuing a second reservation of rights letter on June 7, 2006. (Id. at ¶ 26.) On June 14, 2006, Plaintiff's counsel, James Munley, refused the request for a statement. (Id.)

Plaintiff's claim was denied on July 22, 2006, based upon the version of the facts "available to State Farm, by means of a letter . . . which stated that Mr. McCleester's claim did not arise 'out of the maintenance or use of a motor vehicle.'" (Id. at ¶ 27.) In part, the letter stated: "'As Mr. McCleester has not been available to provide State Farm with a statement, our decision was based upon the facts as reported. Mr. McCleester was struck by a rock thrown from a [sic] overpass.'" (Id.) "On December 20, 2006, Ms. Janice Reavy of plaintiff's counsel's office advised by letter that Mr. McCleester has received worker's compensation benefits and is

4

requesting the difference between his actual loss of gross income and the payments received from the worker's compensation carrier." (Id. at ¶ 28.) Dennis Guld, of State Farm, responded to Ms. Reavy's letter on January 8, 2007, and referenced State Farm's prior letter denying the claim for excess benefits. (Id. at ¶ 29.) Other than the above-referenced correspondence, Defendant avers that "[n]o other information was submitted to State Farm prior to litigation to show that Mr. McCleester's injuries arose out of the maintenance or use of a motor vehicle." (Goldstein Aff., Dkt. 32, at 120.)

When questioned about the incident on September 26, 2008, the adolescent who threw the rock stated that, "goofing with the cars" on I-81 was part of what he was up to when he and his friend were throwing rocks into the road. (Sept. 26, 2008, Joseph Dep., Dkt. 26, at 8.) The adolescent stated he never meant to hurt anyone, but admitted that he and his friend were messing with the cars on the highway, not so much to hit them, but just messing around. (Id. at 7.)[3]

The adolescent's story has changed over time. In an earlier interview transcribed on April 5, 2005, the adolescent stated that he was walking down the road and one of his friends wanted to throw rocks over the trees by the side of the road. (Joseph Dep., Dkt. 24, at 5.) The adolescent stated that his friend Ryan threw a rock and then he threw the rock that hit the truck.

---

[3] It is, however, a crime under Pennsylvania law to throw rocks to or on a roadway. See 18 Pa. C. S. § 2707(b). It is undisputed that the teen was throwing a rock at I-81.

5

(Id.) He stated that he knew the highway was there and could see the highway through the trees, but was simply trying to see who could get the rocks over the trees. (Id. at 7, 10.)

On November 21, 2007, Plaintiff filed a three count complaint in the Court of Common Pleas of Luzerne County seeking damages stemming from breach of contract and violation of Pennsylvania's bad faith law, 42 Pa. C.S.A. § 8371, and a declaration that the subject policy provides first party wage loss benefits. On January 1, 2008, State Farm removed the action to this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332. Discovery was completed and on October 15, 2008, Defendant filed a Motion for Summary Judgment and Plaintiff filed a Cross Motion for Summary Judgment. (Dkts. 18 & 22.) The motions have been fully briefed and are ripe for review.

## II. DISCUSSION

### A. Declaratory Judgment Action

The insurance policy in question provides that Defendants "will pay income loss benefits with respect to bodily injury to an insured arising out of the maintenance or use of a motor vehicle." (Policy, Dkt. 22-3, at 2) (emphasis in original). The terms "maintenance" and "use" are not defined in the policy.

"'Under Pennsylvania law . . . the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm

Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)). When the language of a policy is clear and unambiguous, courts must give effect to that language. Id. If, however, a provision of the policy is ambiguous, the policy should be construed in favor of the insured. Id. The parties do not dispute that Plaintiff was injured, or that he was driving a vehicle covered by the policy at the time of the injury. Thus, this Court is left to determine whether Plaintiff's injury arose out of the maintenance or use of a motor vehicle.

In Smith v. United Servs. Auto. Ass'n, 572 A.2d 785, 787 (Pa. Super. Ct. 1990), the Pennsylvania Superior Court held:

> This court has interpreted the phrase 'maintenance and use of a motor vehicle' to mean the 'maintenance or use of a motor vehicle <u>as a</u> <u>vehicle</u>, including incident to its maintenance or use as a vehicle, occupying, entering into, or alighting from it,' Camacho v. Nationwide Insurance Co., 314 Pa. Super. 21, 23, 460 A.2d 353, 354 (1983), affirmed per curiam, 504 Pa. 351, 473 A.2d 1017 (1984) (emphasis added). Moreover, we have required that 'there must be some causal connection between the injuries and the use of the motor vehicle.' Alvarino v. Allstate Insurance Co., 370 Pa. Super. 563, 568, 537 A.2d 18, 21 (1988) (and the cases cited therein). 'The causal connection need not rise to the level of proximate causation; however, . . . the connection must be more than mere happenstance.' Roach v. Port Authority of Allegheny County, 380 Pa. Super. 28, 35, 550 A.2d 1346, 1350 (1988).

Id. "'[M]aintenance and use' is presumed if occupancy can be shown." Lucas-Raso v. Am. Mfrs. Ins. Co., 657 A.2d 1, 4 (Pa. Super. Ct. 1995). In Weiss v. SEPTA, 21 Pa. D. & C.3d 521 (Pa. Comm. Pl. Ct. 1981), the court held that "maintenance or use of a motor vehicle means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into or alighting from it." Id. at 523 (quoting 40 P.S. §

7

1009.103). Determining that a party was maintaining or using a vehicle, does not, however, end the court's inquiry. Courts must also conduct a causation analysis to determine whether the injury in question arises out of the maintenance or use of the vehicle.

"[I]n determining whether the injury arose out of the ownership, maintenance, or use of the motor vehicle, we must look to the 'instrumentality used to cause the the [sic] injury.'" Smith, 572 A.2d at 786 (Pa. Super. Ct. 1990); see Updike v. WCAB (Yeager Supply, Inc.), 740 A.2d 1193, 1195 (Pa. Commw. Ct. 1999); Dorohovich v. W. Am. Ins. Co., 589 A.2d 252, 257 (Pa. Super. Ct. 1991). Thus, the real issue becomes "the instrumentality used to cause the injury, not whether it was intentionally or accidentally inflicted." Erie Ins. Exch. v. Eisenhuth, 451 A.2d 1024, 1025 (Pa. Super. Ct. 1982).

In Eisenhuth, a passenger shot by a police officer who was attempting to cause the fleeing driver of the vehicle to pull over was denied coverage. Id. The court in Eisenhuth found that although it may be argued that the victim may not have been shot but for his being in the vehicle, that argument is unpersuasive as it was not the vehicle or its use that caused his injuries. Id. at 1026. "If the relevant injury is caused by 'an instrumentality or external force other than the motor vehicle itself,' the insurer is not required to provide coverage." Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care, 136 F. App'x 489, 491 (3d Cir. 2005). Cases in "which the relevant injuries were caused by an intervening act of a third party and had almost no causal connection to the use of an automobile" are distinguishable from cases in which the

8

injury arose purely out of the act of driving a vehicle.  Id. at 492.

In Ash v. Commonwealth Realty Co., 4 Pa. D. & C.3d 418, 419 (Pa. Com. Pl. Ct. 1978), the plaintiff was stopped at a red light when her car was struck by boards and falling debris from a nearby building.  Plaintiff sustained injuries and filed an action pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act of 1974.  Id. The court found that her injuries did not "arise from the use or maintenance of a motor vehicle."  Id. at 420.  The court explained that "plaintiff was not the victim of a motor vehicle accident; neither did [the] injuries arise from the use or maintenance of a motor vehicle. . . . [Plaintiff] was the victim of a falling object, an object which became subject to the unrestrained forces of gravity by virtue of the negligence of" a third party.  Id.

In Weiss, the Plaintiff was a passenger on a SEPTA bus when a pedestrian threw an object through a window of the bus, hitting her and causing her injuries.  Weiss, 21 Pa. D. & C.3d at 522.  The Plaintiff sought no-fault benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act of 1974.  Id.  The court found that there was no nexus between the injury sustained and the "maintenance or use of a motor vehicle," but that instead the injury merely involved a motor vehicle in a remote fashion.  Id. at 524.  The Weiss court observed that where a victim "was struck by a thrown rock while she happened to be a passenger on a bus we find that there is no such nexus between the source of the injury sustained and the use of the motor vehicle as would make her a 'victim' [of a motor vehicle accident] . . . ."  Id. at 523.

As recognized by Chief Judge Donetta Ambrose, the gist of the Pennsylvania decisional law is that "[t]he vehicle must be more than merely incidental to the injury – it must be the instrumentality which caused the injury." Am. Nat'l Prop. & Cas. Co. v. Terwillinger, Civ. A. No. 06-268, 2007 WL 433180, at *2 (W.D. Pa. Feb. 7, 2007). The consequences of an intentional tort with no connection to "a motor vehicle accident other than that the injured party was operating a motor vehicle at the time of its commission" is not enough to find that the injury arose out of the use or maintenance of the vehicle. Camacho v. Nationwide Ins. Co., 460 A.2d 353, 354 (Pa. Super. Ct. 1983). Simply stated, the injuries must occur "as a result of the 'use' of a vehicle." Am. Nat'l Prop. & Cas. Co., 2007 WL 433180, at *3.

In Camacho, the plaintiff was driving when an occupant in an approaching vehicle threw an object at him through an open window. While the plaintiff continued to drive, he reached over into the seat next to him, picked up the object (which was a small bottle that was sparkling), and while trying to throw the bottle out the window, "it exploded in his hand causing the loss of one-third of the right ring finger and other severe and permanent injuries to his right hand." Camacho, 460 A.2d at 354. The court held that his injuries did not arise out of the maintenance or use of a motor vehicle. Id.

Plaintiff argues that Kirsch v. Nationwide Ins. Co., 36 Pa. D. & C.3d 469, 472 (Pa. Com. Pl. Ct. 1985), is controlling in this case. In Kirsch, the plaintiff was injured when a rock was thrown into the air as a result of an explosion at a mining company and crashed through the

10

plaintiff's windshield while he was driving.  Id.  The court stated:

> In this case, there was no criminal or intentional act by a third party.  A rock simply fell from the sky – an unlikely but not inconceivable event.  In fact, it is entirely foreseeable that stones or rocks may be thrown into the air by other vehicles, or fall to the roadway in mountainous areas, or bounce out of open bed trucks, etc.

Id. at 472-73.

Kirsch is plainly distinguishable.  Here, a rock did not simply fall from the sky; the rock was not thrown from another vehicle, did not fall from a mountainous area, did not bounce out of a truck bed, or was not the result of an inherently dangerous activity, such as blasting.  The rock was thrown into the roadway by a third-party criminal act.  Although the adolescent may not have intended to cause Plaintiff's injury, there is no disagreement that he intended to throw the rock toward an interstate highway.

"'An actor is presumed to intend the natural and probable consequences of his actions.'" Kobsic v. Erie Ins. Co., No. 2008-3323, 2009 WL 1278487 (Pa. Com. Pl. Ct. Mar. 13, 2009) (quoting Donegal Mut. Ins. Co. v. Baumhammers, 893 A.2d 797, 823 (Pa. Super. Ct. 2006)); see Holt v. Navarro, 932 A.2d 915, 921 (Pa. Super. Ct. 2007) (quoting Reilly v. Tiergarten Inc., 633 A.2d 208, 210 (Pa. Super. Ct. 1993)) (courts must "'determine whether the injury would have been foreseen by an ordinary person as the natural and probable outcome of the act complained of'").  Moreover, in criminal cases, mens rea may be established purely from circumstantial evidence as the law permits the inference"'that one intends the natural and

probable consequences of his acts.'" Commonwealth v. Jackson, 955 A.2d 441, 444 (Pa. Super. Ct. 2008) (quoting Commonwealth v. Gease, 696 A.2d 130, 133 (Pa. 1997)). Here, the adolescent was aware of the natural and probable consequences of launching an object at an interstate roadway. (Joseph Dep., Dkt. 24, at 10.) Accordingly, the injury was a natural and probable outcome of throwing rocks towards a road, and the analysis in Kirsch is not relevant. See Holt, 932 A.2d at 921; Kobsic, 2009 WL 1278487. Furthermore, Kirsch cannot be reconciled with Camacho. Accordingly, I find this state trial court decision to be less than persuasive.[4]

Pennsylvania courts have reiterated that "[a]utomobile insurance compensates claimants who are injured in vehicle-caused injuries." Lucas-Raso v. American Mfrs. Ins. Co., 657 A.2d 1, 5 (Pa. Super. Ct. 1995). Although it is clear that Plaintiff was using his vehicle at the time he sustained his injuries, see Lucas-Raso, 657 A.2d at 4; Weiss, 21 Pa. D. & C.3d at 525, the focus of this Court's inquiry is whether the injury <u>arose out of</u> his use of the vehicle. Plaintiff's injuries were not vehicle-caused, but instead, were the result of the intentional and criminal act of a third-party.

It is Plaintiff's contention "that coverage must be found as there is no question that Mr. McCleester was accidentally injured . . . during the maintenance and use of an automobile."

---

[4] A Westlaw® search indicates that Kirsch has not been cited by any court in any reported opinion.

(Pl. Mt. S.J., Dkt. 23, at 6.) Plaintiff presents an argument that focuses on the adolescent rock thrower's state of mind, stating, that he "did not specifically throw the rock at Mr. McCleester's truck," but instead was "simply trying to compete to see who could get the rocks over trees." (Id.) Based on this contention, Plaintiff argues that "[t]here is no evidence or contention that this was an intentional attempt to harm" Plaintiff and, consequently, the cases cited by Defendant are not controlling. (Id.)

Plaintiff acknowledges, however, that "[t]he object[ive] of the teenager who threw the rock was to disrupt motor vehicles." (Pl. Opp. Brief, Dkt. 31, at 4.) The natural and probable consequence of such an action would include hitting a vehicle. See Holt, 932 A.2d at 921; Kobsic, 2009 WL 1278487. This action is no different than that found in Camacho and Weiss. Plaintiff tries to distinguish Weiss, by arguing that in Weiss, "there was no evidence of what the intent of the thrower was, i.e., whether the intent was to hit a particular person, or whether 'the object of the crime was the vehicle itself.'" (Dkt. 31, at 5.) The actor's intention to cause injury, however, does not play a role in the determination of whether Plaintiff's injuries arise from the use and maintenance of a motor vehicle. See Day v. State Farm Mut. Ins. Co., 396 A.2d 3, 5 (Pa. Super. Ct. 1978).[5] The adolescent's intent, whether to hit the car or the driver, is of no

---

[5] In Day, the court stated:

> The real issue in this case involves the instrumentality used to cause the injury, not whether it was intentionally or accidentally inflicted. Automobile insurance, including uninsured motorist provisions, are designed to compensate victims for

help in determining whether the injury arose from the use or maintenance of a motor vehicle. If the adolescent was only trying to hit the truck or the road, as opposed to Plaintiff himself, his act was still intentional. Accordingly, the injury was caused by the intentionally-thrown rock, and Plaintiff was not the victim of a motor vehicle accident.

The adolescent's intentional conduct, whether he was throwing rocks at trucks or simply throwing them over the trees, caused the injury. See Erie Ins. Exch., 451 A.2d at 1025 (passenger shot by police officer while seated as passenger in fleeing car not entitled to coverage under automobile liability policy). As the rock was "an instrumentality or external force other than the motor vehicle itself," Defendant is not required to provide coverage. Plaintiff's injury did not arise out of his use or maintenance of a motor vehicle, but instead from the criminal act of a third-party. See Ash, 4 Pa. D. & C.3d at 419; Weiss, 21 Pa. D. & C.3d at 523; Camacho, 460 A.2d at 353. Accordingly, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's claim for a declaratory judgment will be dismissed.

C. Breach of Contract and Bad Faith Claims

"In a claim for breach of contract, there are three necessary elements: the existence of a contract, including its essential terms; a breach of duty imposed by the contract; and resultant

---

vehicle-caused injuries. There must be some connection between the harm done and the insured vehicle.

Id. at 5. Because determination of the adolescent's intent does not change the fact that a rock, as opposed to a vehicle, caused the injuries, Plaintiff's argument is unpersuasive. See id.

damages." Detwiler v. Larsen, No. 08-2652, 2009 WL 2055935 (Pa. Com. Pl. Ct. Feb. 25, 2009). Plaintiff's injuries did not arise out of the maintenance or use of a motor vehicle. Consequently, Defendants did not breach the duty imposed by the contract by denying coverage. See id.

"To recover for bad faith of an insurer under 42 Pa. Cons. Stat. Ann. § 8371, a plaintiff must satisfy a two-prong test: 1) the insurer did not have a reasonable basis for denying coverage, and 2) the insurer knew or recklessly disregarded its lack of a reasonable basis when it denied coverage." Post v. St. Paul Travelers Ins. Co., 609 F. Supp. 2d 382, 385 (E.D. Pa. Apr. 1, 2009). A reasonable basis for denial of coverage "is all that is required to defeat a claim of bad faith." J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 367 (3d Cir. 2004). Because Defendant had a reasonable basis for denial of coverage, and it has been determined that Plaintiff's injuries were not covered by the policy, Defendant is entitled to summary judgment on the bad faith claim.[6]

III. Conclusion

Because Plaintiff's injuries did not arise out of the maintenance or use of a motor

---

[6] Even if coverage was available, the unsettled nature of the law in Pennsylvania in this area would preclude a finding that State Farm acted unreasonably in denying coverage. See Sealy-Yirenkyi v. Quaker City Ins. Co., No. 95-civ-797, slip op. at 7-8 (Lacka. Co. Ct. 1996) (holding victim of car jacking sustained injuries arising out of use of motor vehicle, but dismissing bad faith claim because "[i]t would be unfair to attribute bad faith to the Defendant . . . where the law is unclear . . . ."). (A copy of Sealy-Yirenkyi is attached to the Brief in Opposition to State Farm's Motion at Dkt. 31-3.)

15

vehicle, Defendant's Motion for Summary Judgement will be granted and Plaintiff's Cross Motion for Summary Judgment will be denied.  An appropriate Order follows.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY McCLEESTER, :
        Plaintiff :
         :
  v. : 3:CV-08-0010
         : (JUDGE VANASKIE)
STATE FARM MUTUAL AUTOMOBILE :
INSURANCE, CO. :
        Defendant :

ORDER

NOW, THIS 30th DAY OF SEPTEMBER, 2009, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Plaintiff's Cross Motion for Summary Judgment (Dkt. 22) is DENIED.

2. Defendant's Motion for Summary Judgment (Dkt. 18) is GRANTED.

3. The Clerk of Court is directed to enter judgment in favor of Defendant and mark this matter CLOSED.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge